Frances F. WESTON, Christine M. Kneubehl, and Shauna Parks, n/k/a Shauna Disher, on behalf of themselves and all others similarly situated, Plaintiffs–Appellees,

v.

Donald M. CASSATA, Director of the Adams County Department of Social Services, in his official capacity; and Adams County Board of Social Services, Defendants–Appellants.

No. 99CA2449.

Colorado Court of Appeals, Div. I.

July 5, 2001.

Certiorari Denied Jan. 14, 2002.*

* Justice COATS does not participate.

rigorous requirements of the new welfare system.

In 1997, in accordance with PRWORA, Colorado enacted the Colorado Works Program Act (CWPA), § 26–2–701, et seq., C.R.S.2000. Under this program, participants receive funds "subject to available appropriations" as long as they comply with program requirements. *See* § 26–2–709(1)(a), C.R.S.2000. Counties are required to provide funds to eligible recipients as long as funds are available. *See* Colorado Department of Human Services, Agency Letter AFDC–97–12–A (July 3, 1997). The Colorado Department of Human Services (CDHS), charged with responsibility for overseeing administration of the CWPA, develops standardized forms for the counties to use in streamlining their works program applications, services, and tracking of participants. Section 26–2–712(5)(a), C.R.S.2000.

Participants in the TANF program are required to enter into an Individual Responsibility Contract (IRC), which outlines the program requirements. Section 26–2–708, C.R.S.2000. Individual counties will sanction participants who fail to comply with TANF IRC requirements, and that sanction is in the form of a reduction of their cash assistance. Section 26–2–711(2), C.R.S.2000. Before a participant is sanctioned, however, the participant must receive a sanction notice stating the basis for the county's decision or action, detailing the participant's rights to a county conference under the dispute resolution process and to a state-level appeal, and describing the process of such an appeal. Section 26–2–127(1)(a)(I), C.R.S.2000; CDHS Manual § 3.830, 9 Code Colo. Regs. 2503–1.

All members of the plaintiff class are or were recipients of welfare benefits in Adams County under the revised welfare system administered by defendants; all were sent sanction notices by the Adams County Department of Social Services. The individual plaintiffs who received sanction notices were given the right to dispute the sanction at a local or state level. However, the various sanction notices did not include full or accurate information about the sanctions and the appeal process. Testimony given at trial il-

Davis, Graham & Stubbs, LLP, Thomas S. Nichols, Hoffman Reilley Pozner & Williamson, L.L.P., Barbara Blumenthal, Faegre & Benson, LLP, Steven D. Zansberg, Christopher P. Beall, Denver, CO, Law Offices of Kimberly E. Ghiselli, LLC, Kimberly E. Lord, Boulder, CO, for Plaintiffs–Appellees.

James D. Robinson, Adams County Attorney, Patricia A. Fredrick, Hal B. Warren, Assistant County Attorneys, Brighton, CO, for Defendants–Appellants.

Opinion by Judge DAVIDSON.

In this class action brought to determine the validity of sanction notices issued under Colorado's program for Temporary Assistance to Needy Families, defendants, Donald M. Cassata, Director of the Adams County Department of Social Services, and the Adams County Board of Social Services, appeal from the judgment in favor of plaintiffs, Frances F. Weston, Christine M. Kneubehl, and Shauna Disher, on behalf of themselves and all others similarly situated. We affirm.

The Welfare Reform Act of 1996, also known as the Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA), 42 U.S.C. § 601, et seq., brought about extensive changes in welfare law. Among other changes, it repealed the Aid to Families with Dependent Children (AFDC) program and instituted the Temporary Assistance to Needy Families (TANF) program. Unlike AFDC, which provided recipients with benefits as long as they were eligible, TANF limits welfare benefits to sixty months for eligible adult care-providers of a family unit.

Funding for TANF assistance, like funding for AFDC before it, comes partly from federal monies disbursed to the states. Under TANF, however, receipt of these federal block grants is conditioned in part on the states' enacting legislation limiting welfare relief to recipients who comply with the more

lustrated that defendants pursued a policy of consistently reinstating benefits to recipients who disputed their sanctions, yet defendants continued to use the defective notices.

Plaintiffs brought this class action to determine whether the sanction notices were insufficient. Specifically, pursuant to the Uniform Declaratory Judgments Law, § 13–51–101, et seq., C.R.S.2000, the Administrative Procedure Act (APA), § 24–4–101, et seq., C.R.S.2000, and 42 U.S.C. § 1983, plaintiffs sought a declaration that the sanction notices were inadequate as a matter of law, an injunction barring use of the inadequate notices, reversal of the sanctions, and restitution of amounts withheld under the inadequate notice scheme. Plaintiffs also sought attorney fees pursuant to 42 U.S.C. § 1988.

The named defendants in the original lawsuit included the Denver Department of Social Services; Philip A. Hernandez, Manager of the Denver Department of Social Services; the Colorado Department of Human Services; Marva Livingston Hammons, Executive Director of the Colorado Department of Human Services. The Denver defendants settled with plaintiffs prior to trial. The State defendants are not party to this appeal.

After a bench trial, the court found in favor of plaintiffs. Specifically, the court found that none of the five versions of sanction notices sent by defendants to noncomplying participants between July 1997 and November 1999 met statutory or regulatory requirements. Moreover, the court found that defendants failed to provide due process to plaintiffs, in violation of both the state and the federal constitutions.

Accordingly, the trial court declared all notices provided to plaintiffs inadequate as a matter of law, enjoined defendants from using such notices, ordered reversal and removal of all records of previous sanctions based on inadequate notices, and ordered defendants equitably to restore the cash assistance benefits improperly withheld from plaintiffs under the inadequate notice scheme.

## I.

Defendants contend that the trial court incorrectly refused to dismiss plaintiffs' claims brought pursuant to 42 U.S.C. § 1983. Specifically, they argue that the court erred in determining that defendants' actions had deprived plaintiffs of procedural due process. We disagree.

■ To prevail on a § 1983 claim, plaintiffs must show that: (1) A person (2) acting under color of state law (3) subjected plaintiffs or caused plaintiffs to be subjected to (4) the deprivation of a right secured by the constitution or the laws of the United States. *County of Adams v. Hibbard*, 918 P.2d 212, 217 (Colo.1996).

■ We review matters of statutory construction *de novo*. *Canal Ins. Co. v. Nix*, 7 P.3d 1038 (Colo.App.1999).

### A.

Initially, we address defendants' argument that they are not "persons" and therefore may not be sued under § 1983. We disagree.

■ In an action for monetary damages brought pursuant to § 1983, the states, state officers acting in their official capacities, and local entities considered "arms of the state" are not "persons" and therefore are not subject to suit. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Simon v. State Comp. Ins. Auth.*, 946 P.2d 1298 (Colo.1997). Thus, county departments of social services and their employees have been held not subject to suit for damages under § 1983. *See Wigger v. McKee*, 809 P.2d 999 (Colo.App.1990).

■ In contrast, official-capacity actions for prospective relief are not treated as actions against the state. *See Will v. Michigan Dep't of State Police, supra*. Thus, in actions for declaratory or injunctive relief, such as here, government entities and their officers are properly considered "persons" under § 1983 so long as they are responsible for the implementation and enforcement of a state statute. *See Jackson v. State*, 966 P.2d 1046 (Colo.1998).

■ Here, the plain language of the Colorado Human Services Code, § 26–1–101, et

seq., C.R.S.2000, and the CWPA, clearly delineates responsibilities for both the state and county agencies.

CDHS is responsible for overseeing the implementation of the works program statewide, *see* §§ 26–1–111(2)(a), 26–2–711(1), 26–2–712(5)(a), (e), 26–2–715(2)(3), C.R.S.2000, including, inter alia, prescribing such forms as it may deem necessary, *see* § 26–1–111(2)(e), C.R.S.2000, and developing standardized forms for the counties' use. *See* § 26–2–712(5)(a). To facilitate the counties' use of forms, the state maintains the Client Oriented Information Network (COIN) database, which contains a series of codes describing the activities giving rise to sanction and is available for use by the counties in preparing their sanction notices.

The county departments serve as agents of CDHS and administer public assistance in accordance with its rules and regulations. *See* § 26–1–118(1), C.R.S.2000. Under state regulations, the counties must give adequate and timely notice of any action adversely affecting a participant's welfare benefits. *See* CDHS Manual §§ 3.830.2, 3.830.21–.22, 9 Code Colo. Regs. 2503–1. In doing so, Adams County utilizes the sanction forms developed by the state and uses the COIN program in completing the sanction forms.

We disagree with defendants that under this scheme, and because of the oversight role given to the state, they are not responsible for implementation and enforcement of the statute. One of the expressly stated purposes of the CWPA is to permit counties to have "increased responsibility for the administration of the works program." *See* § 26–2–705(2)(c), C.R.S.2000. The county's role in administration of benefits and the specific duties mandated by statute give the county more than sufficient responsibility to be considered a "person" for the purposes of suit under § 1983.

### B.

Defendants' primary argument is that plaintiffs were not deprived of due process under the notice scheme.

■ Both the United States and Colorado Constitutions prohibit the deprivation of "property" without due process of law. U.S. Const. amend XIV, § 1; Colo. Const. art. II, § 25. The Fourteenth Amendment to the United States Constitution does not create property interests, but rather guarantees procedural protections from infringement upon or denial of substantive rights that stem from an independent source, such as federal or state law. *See Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

■ In analyzing due process issues, courts must first determine whether the asserted property interest merits constitutional protection, and then evaluate the adequacy of the challenged process. *See Watso v. Colorado Dep't of Social Services*, 841 P.2d 299 (Colo.1992).

### 1.

■ Defendants first assert that plaintiffs have no property interest in welfare benefits. We disagree.

Prior to the enactment of the 1996 federal legislative changes in the welfare system, welfare recipients had a statutory entitlement to welfare benefits under the AFDC—in essence, a property right subject to due process protections. *See Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)(describing welfare benefits as "property"). However, with the enactment of PRWORA, Congress stated that there no longer would be any individual entitlement to welfare benefits. *See* 42 U.S.C. § 601(b). In doing so, Congress intended to eliminate the "entitlement mentality" behind the existing welfare system by removing individual entitlement to cash benefits and making welfare benefits temporary and conditional. *See* H.R.Rep. No. 104–651 (1996); Michelle L. VanWiggeren, *Experimenting with Block Grants & Temporary Assistance: The Attempt to Transform Welfare by Altering Federal–State Relations & Recipients' Due Process Rights*, 46 Emory L.J. 1327 (1997).

PRWORA states, in pertinent part: "No individual entitlement. This part … shall not be interpreted to entitle any individual or family to assistance under any State program funded under this part.…" 42 U.S.C.

§ 601(b). Similarly, CWPA, the Colorado statute implementing the federal statute, states: "Nothing in this part 7 or in any rules promulgated pursuant to this part 7 shall be interpreted to create a legal entitlement in any participant to assistance provided pursuant to the works program." Section 26–2–704(1), C.R.S.2000.

Its "no entitlement" language notwithstanding, the state statutory scheme nevertheless contains mandatory language concerning the payment of available funding to eligible participants, *see* § 26–2–709(1)(a), C.R.S.2000 ("Except as provided in this part 7 and subject to available appropriations, a participant *shall* receive a basic assistance grant...."); § 26–2–710(3), C.R.S.2000 ("participant *shall* continue to receive the basic cash assistance grant" during pendency of an appeal), and the issuance of sanction notices. *See also* CDHS Manual § 3.830, 9 Code Colo. Regs. 2503–1 (an applicant is "*entitled* to receive prior written notice of any agency action affecting his/her eligibility for or receipt of benefits or service").

▆▆▆ To have a property interest in a government benefit, a person must have more than a unilateral expectation—he or she must have a "legitimate claim of entitlement to it." Entitlements derive from "an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561.

▆▆▆ In construing a statute, we must read it in context and in a manner that gives effect to the statute as a whole. *See City of Greenwood Village v. Petitioners for Proposed City of Centennial,* 3 P.3d 427 (Colo. 2000). We may not read the statute in a manner that renders it unconstitutional. *See Buckley v. Chilcutt,* 968 P.2d 112 (Colo.1998).

Here, in a thorough and well-reasoned ruling, the trial court rejected defendants' argument that the "no entitlement" language in the statute precluded the creation of a property interest in welfare benefits. We agree.

The court found defendants' interpretation to be inconsistent with the mandatory nature of the welfare program, and concluded that the "no entitlement" language did not pertain to entitlement at an individual level, but rather to the notion that availability of block grants to states was subject to the availability of federal funds. Additionally, the trial court noted that it would be constitutionally impermissible to create property interests that could be defeated simply by stating in the statute that there was "no entitlement."

▆▆▆ We do not dispute defendants' assertion that courts should give effect to the words contained in the statute according to their plain and ordinary meaning. *See Farmers Group, Inc. v. Williams,* 805 P.2d 419 (Colo.1991). Both the federal and state statutes clearly state that there shall be "no entitlement" to welfare benefits. Defendants argue that the clear "no entitlement" language should be read to negate any and all property rights to welfare benefits. Although we agree that the "no entitlement" language modifies the unconditional entitlement to welfare benefits previously available under the AFDC program, we do not agree that it vitiates all forms of property rights in welfare benefits.

Along the spectrum of property rights between absolute entitlement, such as that previously available under the AFDC program, and no entitlement at all, such as that urged by defendants' interpretation of the statute, lies an area of property rights that, while not absolute, invokes due process protection. Accordingly, we explore the several notions of entitlement underlying property rights in welfare benefits.

▆▆▆ On the "absolute" entitlement end of the spectrum, there is the notion of a property right that creates a right of action to sue the state under certain "entitlement programs." *See King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). Under the AFDC program, individuals, by virtue of having a property right in welfare benefits, could sue the state to enforce their rights. *See Goldberg v. Kelly, supra.*

In a related concept, the political and fiscal notion of "entitlement" requires states, in order to receive matching funds from the federal government, to comply with federal

guidelines and then to provide the necessary funding to all eligible participants.

Another, less absolute notion of property rights relates to property allocated on the basis of a regulatory scheme. Such a regulatory scheme, which contains discretion-constraining standards, invokes constitutional due process protection. *See Board of Regents v. Roth, supra; Washington Legal Clinic for Homeless v. Barry*, 107 F.3d 32 (D.C.Cir.1997)(property rights may arise from administrative "rules or understandings"); *see also Mallette v. Arlington County Employees' Supplemental Retirement System II*, 91 F.3d 630 (4th Cir.1996); *Griffeth v. Detrich*, 603 F.2d 118 (9th Cir.1979)(construing mandatory statutory language to give rise to an entitlement). *See generally* Cynthia R. Farina, *Welfare Reform Symposium on Misusing "Revolution" & "Reform": Procedural Due Process & the New Welfare Act*, 50 Admin. L.Rev. 591 (1998) (discussing the foregoing notions of entitlement).

In *Roth*, the United States Supreme Court tied the determination of this type of "property interest" to the degree of discretion vested in an official decisionmaker to withhold the benefit or impose the burden. There, the *Roth* Court, referring to *Goldberg v. Kelly, supra*, stated that the welfare recipients' claims of entitlement were "grounded in the statute defining eligibility for them." *Board of Regents v. Roth, supra*, 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561. Thus, if the statutory scheme comprehensively sets forth the conditions under which claims of entitlement attach, and the individual recipient meets those conditions, the official decisionmaker merely acts as a conduit for distribution of welfare benefits. In such a situation, the potential recipient's compliance with the statutory standards, rather than the decision of an official, gives rise to the welfare benefit.

In *Washington Legal Clinic for Homeless v. Barry, supra*, the federal circuit court reconfirmed that the less discretion the state official has to determine a benefit, the more likely the benefit is a "property right." Based on that reasoning, the court determined that, because discretion for allocation of available shelter was in the hands of administrators, the emergency shelter program in question did not create an entitlement.

In a similar vein, a property right also may depend on whether, absent the alleged denial of due process, there is either a certainty or a very strong likelihood that an application would have been granted. *See Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54 (2d Cir.1985)(examining entitlement in the context of petitioner's likelihood of obtaining a certificate of location approval).

When the federal government enacted the 1996 welfare reform laws, its purposeful inclusion of "no entitlement" in the plain language of the statute indicated an intent to dispose of an individual's absolute entitlement to welfare benefits. However, because we must interpret a statute in its entirety, *see City of Greenwood Village v. Petitioners for Proposed City of Centennial, supra*, we may not, as defendants urge, end our analysis with that single phrase. Despite the forcefulness and apparent specificity of the "no entitlement" language, the construction of the remainder of the welfare statutory scheme illustrates that the federal government did not, and constitutionally could not, eliminate all forms of entitlement to welfare benefits.

The current structure of the block grant program provides, in essence, that the federal government may or may not disburse funds to states for welfare purposes, depending on whether funds are available. If funds are available, the federal government may further condition disbursement of funds on whether states have complied with the conditions set forth in federal welfare legislation. The government is not obligated to allocate funds to the states and has a wide degree of discretion in deciding whether to allocate funds.

At that stage of the process, a participant's right to welfare benefits has not yet matured into a personal "entitlement." The federal government may decide not to make funding available to the states for welfare programs, and may withhold funding from states that fail to follow federal standards. In either of these situations, individuals expecting welfare benefits cannot sue the states for bene-

fits not given. However, once a state, having enacted the legislation required by federal statute, receives a federal block grant for the express purpose of distribution as welfare benefits, welfare recipients will receive the money if they comply with the statutory standards.

Here, the record indicates that both state and county officials conceded that participants in the program have the right to receive cash assistance benefits if such benefits are available and that, if participants are eligible, the county must make such payments.

 Accordingly, we conclude that, once welfare recipients have complied with statutory standards and have begun receiving welfare benefits, the right to welfare benefits is a property right that cannot be compromised without procedural due process protections. If money has been allocated by the federal government to the state, and if a participant meets the criteria set forth by statute, defendants have no discretion to determine whether that participant should receive welfare benefits. *See Board of Regents v. Roth, supra.* Despite the state officials' active role in distributing welfare monies, that role has no discretionary component beyond the authority to withhold or distribute benefits according to statute.

 Thus, the due process right under the new scheme is not "the guarantee of getting the benefit," but rather the guarantee that, if and when the benefit is granted, the "government will employ a decisionmaking protocol reasonably likely to yield correct application of the legally relevant substantive criteria to the individual case." Farina, *supra,* 50 Admin. L.Rev. at 622. Although the government has unambiguously expressed an intent to do away with the absolute entitlement to welfare benefits previously available under the AFDC program, it did not intend to eliminate welfare benefits altogether, but merely to create a more conditional property right in the receipt of federal benefits and to make the requirements of attaining a property right in those benefits more rigorous.

 Furthermore, the General Assembly may not constitutionally authorize the depri-

vation of a property interest, once conferred, without appropriate procedural safeguards. *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Washington Legal Clinic for Homeless v. Barry, supra,* 107 F.3d at 38 (expressing doubt that "blanket 'no-entitlement' disclaimers can by themselves strip entitlements from individuals in the face of statutes or regulations unequivocally conferring them"). Consistent with that principle, federal regulations still require that hearings at the state agency level "shall meet the due process standards set forth in the U.S. Supreme Court decision in *Goldberg v. Kelly.*" 45 C.F.R. § 205.10(a)(1)(ii) (2001).

Accordingly, we conclude that because plaintiffs had a property right, albeit not an unlimited one, in continued receipt of welfare benefits, plaintiffs were constitutionally entitled to procedural due process.

### 2.

 Defendants also argue that, because under *Goldberg v. Kelly, supra,* a pretermination notice merely need provide timely and adequate notice detailing the reasons for a proposed termination, the Adams County notices were more than adequate. We disagree.

 If an administrative regulation sets forth the minimum standards for notice requirements, those standards serve as the minimum notice required for due process. *See Dep't of Health v. Donahue,* 690 P.2d 243 (Colo.1984). A notice of adverse action that fails to comply substantially with federal and state requirements cannot provide the basis for a deprivation of benefits. *See Weaver v. Colorado Dep't of Social Services,* 791 P.2d 1230 (Colo.App.1990).

According to the state regulation, necessary components of an adequate notice require that:

A. The notice must be in writing; and,

B. It must describe clearly in terms that are understandable to the applicant or recipient the action to be taken and the reason(s) for the action; and,

C. It must refer specifically by number to the section(s) of the State Department's rules and/or in the Colorado Works Program, the county's official written policy(s) that require or permit the action be taken, or cite the specific changes in federal or state law requiring the action; and,

D. It must state the effective date of the proposed action; and,

E. It must explain the individual's right to request a local level dispute resolution conference and state level fair hearing, the time period for requesting a. conference or hearing, and the steps which must be taken to obtain a conference or hearing; and,

F. It must explain the recipient's right to continued benefits and the obligation to repay if it is determined that the recipient was not entitled to receive them; and,

G. It must inform the individual of his/her right to be represented or assisted by legal counsel, a relative, a friend or a spokesperson of his/her choosing.

H. To the extent practicable, notice shall be in his/her primary language. If s/he is illiterate, the action shall also be explained verbally.

CDHS Manual § 3.830.21, 9 Code Colo. Regs. 2503–1.

The trial court found all Adams County notices to be inadequate under this regulation. The court made particularized findings as to the respective shortcomings of five different phases of sanction notices issued between July 1997 and November 1999.

Phase I notices failed to state the actual amount of the sanction, failed to describe the effect of the sanction on future benefit levels, failed to provide a sufficiently specific reason for the sanction, failed to provide a citation to the enabling regulation, and incorrectly stated that the participant had only twenty-six, instead of ninety, days to appeal. Phase II notices contained all the same errors as Phase I notices and also failed to provide the effective date for the rollover of the sanction. Phase III notices contained all the same errors as Phase II notices, with the exception of the incorrect statement that the participant had only twenty-six days to appeal.

Phase IV notices failed to state the amount or effect of the sanction, to provide a sufficiently specific reason for the sanction, and to provide an effective date for the rollover of the sanction. Finally, Phase V notices contained the same deficiencies as Phase IV notices, with the exception of the failure to provide an effective date for the rollover.

In summary, the trial court found that all the sanction notices failed to state the amount of the sanction and a sufficiently specific reason for the action taken. Specifically, the court held inadequate as a matter of law the sanction notices stating the appeal period to be twenty-six days, rather than ninety days. Generally, the court found that defendants failed to comply with CDHS regulations.

The record demonstrates that the notices contained the patent deficiencies noted by the trial court. Accordingly, we conclude that the legal insufficiency of the notices deprived plaintiffs of due process of law.

## II.

Defendants also contend that, because plaintiffs failed to pursue or exhaust all available administrative remedies, the trial court lacked subject matter jurisdiction over plaintiffs' state claims under the Colorado APA and the declaratory judgments law. We disagree.

Exhaustion of administrative remedies is not required when it is "clear beyond a reasonable doubt" that further administrative review by the agency would be futile because the agency will not provide the relief requested. *See State v. Golden's Concrete Co.*, 962 P.2d 919 (Colo.1998). Also, when a practice is aimed at avoiding the possibility of judicial review, there is no requirement of exhaustion. *See Ellis v. Blum*, 643 F.2d 68 (2d Cir.1981).

We note that the administrative law system is geared toward individuals and authorized to hear and resolve individual appeals. *See* CDHS Manual § 3.850.1, 9 Code Colo. Regs. 2503–1.

In denying defendants' motion, the court stated that, because defendants maintained a practice of reinstating welfare benefits to

those sanctioned recipients who appealed, the possibility of judicial review on the issue of adequacy of notice never materialized.

The record supports the court's finding that individuals who appealed a sanction received reinstatement of welfare benefits. Although individual plaintiffs had a process by which to contest their personal sanction in a particular situation, we agree with the trial court that defendants' practice of uniformly reinstating welfare benefits foreclosed individual plaintiffs from the opportunity to contest the inadequacy of sanction notices in general.

Furthermore, the record illustrates that defendants consistently refused to modify the insufficient sanction notices, even in the face of administrative decisions that the notices were inadequate. Defendants insisted that the insufficiency of notices was the state's, not the county's, concern.

By bringing this class action, plaintiffs sought to remedy not their own personal deprivation of benefits, but the inadequacy of the notice system in general. The inadequacy of the sanction notices presented a concern distinct from those of individual claimants, and thus an issue broader in scope than the questions the administrative review process is permitted to address. *See* CDHS Manual § 3.850.1, 9 Code Colo. Regs. 2503.1. Although the administrative framework provides relief for individuals, we agree with the trial court that such remedies could not provide the sort of classwide relief sought by plaintiffs in this case.

The judgment is affirmed.

Judge METZGER and Judge ROY concur.