The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Brian V. PRENDERGAST, Defendant–Appellant.

No. 02CA1148.

Colorado Court of Appeals, Div. V.

Oct. 9, 2003.

Certiorari Denied April 12, 2004.*

---

* Justice KOURLIS does not participate.

Justice BENDER would grant as to the following issue: Whether the court of appeals erred in affirming the trial court's denial of the defen-

dant's motion for mistrial when the evidence presented at trial showed that the defendant had not been barred by the NASD from engaging in the buying and selling of securities.

Ken Salazar, Attorney General, John D. Seidel, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Robert T. McAllister, P.C., Robert T. McAllister, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, Brian V. Prendergast, appeals the judgment of conviction entered on a jury verdict finding him guilty of twelve counts of securities fraud and one count of theft. We affirm.

Defendant was in the insurance industry and became involved with various business ventures. In 1995, the National Association of Securities Dealers (NASD) notified him of a pending investigation concerning him. Thereafter, NASD filed a complaint against him, censured him, and barred him from associating with any NASD member. The sanction became final after defendant's appeal was denied.

In 1996, the Commodity Futures Trading Commission (CFTC) filed an administrative action against defendant and obtained a permanent injunction barring him from participating in commodities trading.

In 1997, defendant filed for voluntary personal bankruptcy, and in that same year, he incorporated a start-up company. During 1997 and 1998, he sold shares of equity in the company. He represented to potential investors that the money they paid for the shares would serve as capital for the company and promised them a return on their investments. He also executed promissory notes, typically payable within three months, to certain of the investors.

The company purported to provide a health insurance program and agency in the Middle East in connection with hospital development. But defendant represented to some investors that the company had different business objectives, including smart card technology and investments in various government and foreign bonds.

In 2000, defendant was charged with the theft of approximately $85,000 from six investors. He was also charged with eighteen counts of securities fraud based on his misappropriation of company funds and his failure to disclose material information, including: (1) the risk involved in investing in a start-up business; (2) his pending personal bankruptcy proceeding; (3) his status with the NASD; and (4) investigations of him by the CFTC and the Securities and Exchange Commission (SEC).

Following trial, a jury convicted defendant of one count of theft and twelve counts of securities fraud.

I.

Defendant first contends the trial court erred in instructing the jury on the definition of "materiality." He maintains that the definition given was incorrect because it was a civil, objective standard and was inconsistent with § 11–51–501(1)(b), C.R.S.2002. We disagree.

It is the duty of the trial court to instruct the jury properly on all matters of law. *People v. Stewart,* 55 P.3d 107 (Colo.2002); *People v. Garcia,* 28 P.3d 340 (Colo.2001).

We review a jury instruction to which a defendant objected at trial using a harmless error analysis. Under this standard, we will reverse if the error affects the substantial rights of the defendant. Where the error is not of constitutional dimension, it will be disregarded if there is not a reasonable probability that the error contributed to the defendant's conviction. Crim. P. 52(a); *People v. Garcia, supra.*

In determining the propriety of a particular jury instruction, the instructions should be viewed as a whole. If two instructions are in direct conflict and one of the instructions is an incorrect and clearly prejudicial statement of law, the fact that the other instruction contains a correct statement of law cannot cure the error. *People v. Riley,* 708 P.2d 1359 (Colo.1985).

The Colorado Securities Act (CSA) is a remedial act intended to protect investors and maintain public confidence in securities markets while avoiding unreasonable burdens on participants in capital markets. Section 11–51–101(2), C.R.S.2002. The CSA is

construed broadly to effectuate these purposes. *People v. Rivera*, 56 P.3d 1155 (Colo. App.2002).

As relevant here, § 11–51–501(1)(b) makes it unlawful for any person in connection with the offer or sale of any security, directly or indirectly, "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading."

■ Section· 11–51–501(1)(b) is the analogue of § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) (2002). *See* § 11–51–101(3), C.R.S.2002; *People v. Rivera, supra; see also* 17 C.F.R. § 240.10b5 (2002). Thus, interpretations of federal law are persuasive in interpreting the CSA. *People v. Rivera, supra.*

■ When construing a Colorado securities statute, however, we apply fundamental principles of statutory construction before resorting to case law regarding similar federal statutes and regulations. *Rosenthal v. Dean Witter Reynolds, Inc.*, 908 P.2d 1095 (Colo.1995).

In construing a statute, our primary task is to ascertain and give effect to the intent of the General Assembly, as expressed in the language it selected, giving the words selected their plain and ordinary meaning. If the language is clear and the intent appears with reasonable certainty, there is no need to resort to other rules of statutory construction. *People v. Shinaut*, 940 P.2d 380 (Colo. 1997). We read and consider statutes as a whole, construing each provision in harmony with the overall statutory scheme, structure, and purpose. *Whitaker v. People*, 48 P.3d 555 (Colo.2002).

### A.

Neither the CSA nor the federal statute or regulations define the term "material." *See* § 11–51–201, C.R.S.2002; 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b5; *see also People v. Riley, supra*, 708 P.2d at 1364 n. 4 (in CSA prosecution, looking to definitions of "material" and "fraud" in the context of criminal

perjury, civil fraud, and fraudulent misrepresentation).

In *Goss v. Clutch Exchange, Inc.*, 701 P.2d 33, 36 (Colo.1985), a civil action for damages under the CSA, the Colorado Supreme Court held the "standard of materiality adopted with respect to federal securities statutes should be applied in actions arising under the [CSA]." The court concluded a misrepresented or omitted fact was material under the CSA "if there is a substantial likelihood that a reasonable investor would consider the matter· important in making an investment decision." *Goss v. Clutch Exch., Inc., supra*, 701 P.2d at 36.

The *Goss* court stated that whether the misrepresented or omitted fact is important turns on "whether a reasonable investor would regard it as significantly altering the 'total mix' of information made available." *Goss v. Clutch Exch., Inc., supra*, 701 P.2d at 36 (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976)).

Other divisions of this court have cited the *Goss* standard in the context of criminal securities fraud prosecutions. *See People v. Rivera, supra* (citing *Goss* in determining an evidentiary issue); *People v. Campbell*, 58 P.3d 1148 (Colo.App.2002); *see also People v. Riley, supra.*

■ Here, the jury was instructed on the elements of the crime of securities fraud in accordance with § 11–51–501(1)(b):

1. That the defendant ...

3. in connection with the offer, sale or purchase of any security,

4. directly or indirectly,

5. willfully,

6. (a) made any untrue statement of material fact,

 -or-

 (b) omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

The court gave a separate instruction defining "material fact":

A misrepresented or omitted "fact" is considered "material" if there is a substantial

likelihood that a reasonable investor would consider the matter important in making an investment decision. Whether or not a misrepresented or omitted fact is important turns on whether a reasonable investor would regard it as significantly altering the total mix of information made available.

Defendant objected to the materiality instruction. He argued that the elements instruction should stand alone, explaining: "There was no attempt in the criminal statute to define [materiality] as what a reasonable person would do. As a matter of fact, it's just the opposite. It's what a person in those factual circumstances would do."

The trial court overruled his objection, reasoning that "the statute upon which liability attaches is the same" for either a criminal prosecution or civil action. We agree.

The CSA's statutory structure demonstrates the General Assembly's intent to define general provisions applicable to both criminal and civil violations.

Part 2 of the CSA sets forth a single set of definitions. Part 5 defines fraud and other prohibited conduct, as alleged here under § 11–51–501. Part 6 establishes criminal and civil liability for violations of § 11–51–501. A "willful" violation is criminal and constitutes a class 3 felony. Section 11–51–603(1), C.R.S.2002.

Civil liability arises from violations of § 11–51–501 under other circumstances. Section 11–51–604(3), C.R.S.2002 (any person who "recklessly, knowingly, or with an intent to defraud" sells or buys a security in violation of § 11–51–501(1) is liable for legal or equitable relief); § 11–51–604(4), C.R.S.2002 (any person who sells a security in violation of § 11–51–501(1)(b) to a person who has imputed knowledge of untruth or omission is liable for limited damages).

■ Definitions derived from civil law may be applied to criminal statutes. *See People v. Riley, supra; see also State v. Ross,* 104 N.M. 23, 715 P.2d 471, 475 (Ct.App.1986)(recognizing reasoning from civil case that securities fraud statute is not identical to common law fraud).

In *People v. Riley, supra,* the Colorado Supreme Court upheld the constitutionality of the version of § 11–51–501(1)(b) then in effect. In so holding, the court acknowledged that it had not yet defined the term "material" in the context of this statute. The court observed, however, that "such terms have been defined and applied in many cases," such as criminal perjury, civil fraudulent concealment, and civil fraud cases. *People v. Riley, supra,* 708 P.2d at 1364 n. 4; *see also Bridwell v. State,* 804 S.W.2d 900, 903 & n. 4 (Tex.Crim.App.1991)(adopting objective standard of materiality as applied in federal cases, and explaining that under the Texas Securities Act, "[m]ateriality is the one common-law element still strongly viable under federal securities fraud laws"); *cf. Koch v. Koch Indus., Inc.,* 203 F.3d 1202 (10th Cir.2000)(distinguishing objective materiality standard applied to cases brought under Texas Securities Act from subjective standard applied to cases brought for common law fraud and other state statutory violations).

We thus interpret the definitions in Part 2 to apply generally to all parts of the CSA, whether those parts are at issue in a civil or criminal case. *See Whitaker v. People, supra.*

### B.

We also reject defendant's related contention that the materiality instruction is inconsistent with the statutory phrase, "in light of the circumstances under which they were made."

■ That phrase does not modify the term "material fact," but simply requires the fact finder to determine whether the statement at issue was misleading under the circumstances.

Accordingly, we conclude the trial court did not err in instructing the jury on the definition of "materiality."

### II.

Defendant next contends the trial court's materiality instruction "obviously misled" the jury and the court also erred in responding to a jury question regarding materiality that

was posed during deliberations. We disagree.

■ When a jury during deliberations communicates any misunderstanding or confusion relating to a matter of law central to the guilt or innocence of the defendant, the trial court should give an additional or supplemental instruction responding to the jury's inquiry. However, no additional or supplemental instruction is required when the original instructions adequately inform the jury. *People v. Mendez,* 897 P.2d 868 (Colo.App.1995).

■ It is presumed the jury understood and heeded the trial court's instructions, but this presumption is rebutted where a jury affirmatively indicates it has a fundamental misunderstanding of an instruction it was given. *Leonardo v. People,* 728 P.2d 1252 (Colo.1986).

Here, during the jury's deliberation, the foreperson submitted the following question:

On Counts 2 through 18 [alleging violations of § 11–51–501(1)(b) ], are the standards for the crime of securities fraud (by omission or misrepresentation) to be considered in relation to a reasonable prudent person in regard to material facts or based on each individual person and the evidence presented regarding each individual sale?

Before responding, the trial court properly consulted counsel, and defendant again contended the materiality instruction was incorrect. Over his objection, the trial court instructed the jury that the materiality instruction, "which defines material fact, is the standard you should apply."

■ Contrary to defendant's contention, we conclude the jury's question did not affirmatively indicate a fundamental misunderstanding of either instruction, and no supplemental instruction was necessary because the original instructions adequately informed the jury.

We therefore conclude the trial court's response to the jury's question was proper.

III.

Defendant next contends the trial court erred in allowing factual and legal opinion testimony by the deputy securities commissioner for the State of Colorado. Defendant asserts that this witness made two incorrect statements of law and that these misstatements usurped the province of the jury. Relying on *Specht v. Jensen,* 853 F.2d 805 (10th Cir.1988), and *United States v. Scop,* 846 F.2d 135 (2d Cir.1988), defendant contends such testimony also invaded the province of the court. We disagree.

Expert testimony is admissible when the expert's special knowledge will assist the trier of fact to understand evidence or to determine a fact in issue. CRE 702; *People v. Rivera, supra.* Opinion testimony that is otherwise admissible is not objectionable because it embraces an ultimate issue of fact. CRE 704; *People v. Rivera, supra.*

Trial courts have broad discretion to determine the admissibility of expert testimony pursuant to CRE 702, and the exercise of that discretion will not be overturned absent an abuse of discretion. *Lanari v. People,* 827 P.2d 495 (Colo.1992).

Here, the prosecution requested that the witness be qualified as an expert in "the Colorado Securities Act and its application [to] securities in general." After defendant conducted a brief voir dire, the trial court qualified the witness as an expert under CRE 702 to offer opinion testimony regarding the Colorado securities laws.

The witness then testified without objection that:

[I]n the consumer area, it's what we call buyer beware. . . .

Securities law is different. Securities law is premised on seller beware. The reason for that is, quite frankly, when you are involved in a securities transaction, for example, you may have a stock certificate that may be nothing more than two pages or the front and back of a piece of paper. So what do I know about this? How is this different [from a tangible good]? About all I know about this is I can probably tear it in half, I can fold it. . . . But do I know what this constitutes?

[S]ecurities laws have developed such that the person offering and selling the security that is seeking the investment from another person is obliged to make *full and fair disclosure of all material facts* to that prospective buyer.

(Emphasis added.)

The witness mentioned "full and fair disclosure" again in his testimony, and the jury did not receive any instructions referring to that phrase.

The witness also defined materiality, stating that:

Materiality means that . . . there's a substantial likelihood that a reasonable investor would consider the misstated or omitted fact important in deciding whether to buy or not to buy or to sell or not to sell a security.

. . . . Important means that the same reasonable investor would consider that misstated or omitted fact as significant in changing or altering the total mix of information that's been provided to them about this particular investment.

At the close of the evidence, the trial court instructed the jury to follow the law as given to them by the court:

It is [the trial judge's] job to decide what rules of law apply to the case. While the lawyers may have commented during the trial on some of these rules, you are to be guided by what I say about them. You must follow all of the rules as I explain them to you. Even if you disagree or don't understand the reasons for some of the rules, you must follow them. No single rule describes all the law which must be applied. Therefore, the rules must be considered together as a whole.

The court also gave the jury the standard instruction regarding expert testimony: "You have heard witnesses who have testified as experts. You are not bound by the testimony of experts, [and] their testimony is to be weighed as that of any other witness. It is entirely your decision to determine what weight shall be given their testimony."

■ There can be a fine line between impermissible expert testimony about legal issues and permissible expert testimony about a standard of care or an expert's conclusion based upon mixed questions of facts and law. However, it is within the province of the trial court, and not the expert witnesses, to tell the jury what the law is. *See Specht v. Jensen, supra.*

In *Specht v. Jensen, supra,* 853 F.2d at 809, the court explained the harm that may occur when an expert—there, an attorney—was allowed to usurp the trial court's function:

[H]arm is manifested in at least two ways. First . . . the jury may believe the attorney-witness . . . is more knowledgeable than the judge in a given area of the law. . . . Second, testimony on ultimate issues of law by the legal expert is inadmissible because it is detrimental to the trial process. If one side is allowed the right to call an attorney to define and apply the law, one can reasonably expect the other side to do the same. . . . [I]t can be expected that both legal experts will differ over the principles applicable to the case. The potential is great that jurors will be confused by these differing opinions, and that confusion may be compounded by different instructions given by the court.

However, the trial court also explained the distinction between testimony on the ultimate factual questions, which aids the jury in reaching a verdict, and testimony that articulates and applies the relevant law and circumvents the jury's decision-making function by telling it how to decide the case.

In *Specht,* the expert testified for a full day about "nearly every element of the plaintiff's burden of proof." *Specht v. Jensen, supra,* 853 F.2d at 808. The court concluded the expert's testimony was so pervasive as to supplant both the court's duty to set forth the law and the jury's ability to apply this law to the evidence. The court held admission of this testimony was not harmless.

Similarly, in *Scop,* the court concluded expert testimony exceeded the limits of Fed. R.Evid. 704. There, the prosecution called the chief investigator of the regional SEC office as an expert witness. He testified that based on the trial evidence, it was his opinion that: "[the stock] was manipulated and that

certain individuals were active participants and material participants in the manipulation of that stock." *United States v. Scop, supra,* 846 F.2d at 138. At other times, the witness "corrected himself in mid-sentence to include the same elements in his answer" and "consciously used the same formulation" of these terms. *United States v. Scop, supra,* 846 F.2d at 138.

The court in *Scop* concluded that because the witness repeatedly used statutory and regulatory language indicating guilt, without sufficient explanation of the language used, his testimony was inadmissible.

■ Here, by contrast, the expert witness gave a brief overview of securities law, and his opinion was based on his independent review of the facts. Further, his statements concerning materiality were legally correct, *see People v. Rivera, supra; People v. Campbell, supra,* as were his statements concerning "full and fair disclosure." *See Mills v. Elec. Auto–Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970)(recognizing congressional purpose of § 10(b) of the Securities and Exchange Act of 1934 is to ensure full and fair disclosure to shareholders); *Boettcher & Co., Inc. v. Munson,* 854 P.2d 199 (Colo.1993).

We acknowledge that the term "full and fair disclosure" is not expressly referenced in the CSA, and that fact was brought out on cross-examination of the expert. Nevertheless, the concept of full and fair disclosure is implicit in § 11–51–501(1)(b), as it is in the federal statutes and regulations.

The expert witness's statements were not phrased in a prejudicial manner, were not repeated so as to give rise to the inference that he was consciously using the same formulation, were not so pervasive as to supplant the court's duty to set forth the law, and were clarified during cross-examination. Thus, *Specht* and *Scop* are distinguishable.

To the extent defendant contends the expert's testimony usurped the province of the jury, we disagree. This argument was rejected in *People v. Rivera, supra,* insofar as it related to the expert testimony defining "security." We conclude the balance of the expert's testimony here likewise did not usurp the jury's role in deciding any factual issues.

Because the trial court properly instructed the jury and the witness's special knowledge assisted the jury, we conclude the trial court did not commit error, plain or otherwise, in allowing the testimony of the deputy securities commissioner.

## IV.

Relying on *People v. Spoto,* 795 P.2d 1314 (Colo.1990), defendant next contends the trial court abused its discretion by admitting into evidence the NASD complaint and decree. Again, we disagree.

As a threshold matter, we note that the documents at issue were the NASD "Complaint and Decree," designated as People's exhibits 71 and 72. Exhibit 71 is the NASD decision, but exhibit 72 is not part of the record on appeal. We therefore must presume its regularity. *See People v. McCullough,* 6 P.3d 774 (Colo.2000).

*People v. Spoto, supra,* addresses the admissibility of evidence of prior bad acts under CRE 404(b). But the trial court also may admit the evidence under another evidentiary theory without complying with the procedural safeguards required by CRE 404(b). *See People v. Campbell,* 58 P.3d 1148 (Colo.App.2002); *People v. Rivera, supra.*

In *Rivera,* as here, the defendant was charged with criminal securities fraud for soliciting investments in her business. The prosecution offered certain evidence of prior bad acts, including negative business information and the prior felony convictions of another person within the business. The prosecution contended this evidence was proof of material facts that defendant concealed.

The division in *Rivera* concluded the evidence was admissible, reasoning that in a securities fraud case, the defendant's prior misconduct was information that should have been disclosed to investors.

■ Similarly, here, the prosecution alleged that defendant had been sanctioned by the NASD and failed to disclose this fact to potential investors. The NASD document

was offered to show defendant had been sanctioned by NASD and to impeach an exhibit submitted by defendant. Further, the specific allegations were admissible, not just the fact of the NASD sanction, because it reflected the kind of information a reasonable investor would consider in making an investment. *See People v. Rivera, supra.* The document was also relevant to prove defendant's intent. *See People v. Campbell,* 58 P.3d 1148 (Colo.App.2002); *see also Boettcher & Co., Inc. v. Munson, supra.*

We therefore conclude the trial court's admission of the NASD documents and the information contained therein was proper under *People v. Rivera, supra,* and we perceive no abuse of discretion by the court in admitting these documents.

Given our conclusion, we need not address defendant's contention that the trial court erred in failing to provide a curative instruction.

## V.

Defendant next contends the trial court abused its discretion by denying his motion for mistrial. We disagree.

■ A mistrial is a drastic remedy and is warranted only when prejudice to the accused is so substantial that its effect on the jury cannot be remedied by other means. The grant or denial of a mistrial is within the discretion of the trial court. *People v. Kerber,* 64 P.3d 930 (Colo.App.2002).

■ The trial court also has discretion to determine whether a prosecutor's statements constitute inappropriate prosecutorial argument, and it should consider the context in which the statements were made. A trial court is in the best position to evaluate the effects of allegedly prejudicial statements made by a prosecutor. *People v. Richardson,* 58 P.3d 1039 (Colo.App.2002).

The cumulative, prejudicial effect of prosecutorial misconduct that so undermines the fundamental fairness of a trial as to cast serious doubt upon the reliability of the judgment of conviction may constitute plain error. *People v. Jones,* 832 P.2d 1036 (Colo.App. 1991).

Here, the prosecution called the vice president and district director of NASD Regulation to testify on the NASD proceedings against defendant. The witness testified to the scope and effect of the NASD decree, including the fact that defendant was not "barred from trading" and that the sanctions against him did not become final until after his appeal was completed in 2001.

After the director's testimony, defendant moved for a mistrial, explaining:

> [W]e've created the wrong impression here that [defendant was] barred from the securities industry ... either practically, or legally. And, secondly, we have created this impression that this information should have been disclosed to potential [investors] that he was dealing with when, in fact, as long as it was on appeal [it is] as if it didn't exist.... [Q]uite frankly, I did not know what the effect of the decision was and what the effect of the appeal was until [the director] told us.

■ In denying defendant's motion for mistrial, the trial court acknowledged that defendant's NASD status was inaccurately phrased during trial. However, it found that all counsel believed the NASD order was in effect as of 1997, and that "there has not been, in the phrasing or questions or in the opening statements ... deliberate mischaracterization of the evidence." The court further found that the jury "very clearly understands the legal effect and ramifications of the NASD's ruling." Accordingly, the trial court found no substantial prejudice was created by any mischaracterization of the questions.

We thus perceive no abuse of discretion in the trial court's denial of defendant's motion for mistrial.

## VI.

Defendant next contends the trial court erred in denying his Crim. P. 29 motion for judgment of acquittal. He asserts that the prosecution did not prove he was censured and barred from association with any member of NASD, as alleged in the information. Again, we disagree.

Crim. P. 29(a) allows a court upon motion to order the entry of a judgment of acquittal if the evidence is insufficient to sustain a conviction of an offense.

 When ruling on a motion for judgment of acquittal, the trial court must determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt. We will not disturb the trial court's ruling on such a motion absent an abuse of discretion. *People v. Jones,* 990 P.2d 1098 (Colo.App.1999).

Here, the information stated:

In November 1997 the NASD proceedings were final and [defendant] was censured and barred from association with any member of the NASD in any capacity. [Defendant] failed to disclose the NASD investigation, the NASD complaint and/or the final decision to bar [defendant] from association with any member of the NASD to [six of the victims] prior to soliciting and accepting investment money from them.

Defendant did not move for a judgment of acquittal under Crim. P. 29 at the close of the prosecution's evidence or at the close of all of the evidence. However, after the court received the NASD director's testimony and before the prosecution rested, defendant stated the following: "In this case the defendant is charged in multiple counts, and the charge correctly, I think, states the sanction that was stated in the NASD decision, that, in fact, the defendant is sanctioned and barred from associating with any NASD member."

The trial court concluded the charging document correctly phrased the charge "in terms of, if you will, from associating with other NASD members."

Even assuming defendant properly moved for a judgment of acquittal, we conclude the information does not contain the misstatement of which defendant complained during the trial. Thus, we perceive no abuse of discretion by the trial court in this regard.

## VII.

Finally, defendant contends the evidence was insufficient to sustain his theft conviction because he obtained control over the victims' money with their authorization. We disagree.

In reviewing an insufficiency of evidence claim, we view the evidence presented as a whole and in the light most favorable to the prosecution to determine whether the evidence is sufficient to support a conclusion by a reasonable person that the defendant is guilty beyond a reasonable doubt. The prosecution is entitled to the benefit of every reasonable inference that may be fairly drawn from the evidence, *Kogan v. People,* 756 P.2d 945 (Colo.1988); *People v. Rivera, supra,* even if the record also contains evidence to the contrary, *People v. Morrow,* 682 P.2d 1201 (Colo.App.1983).

As relevant here, a person commits theft when he or she knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception, and uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use and benefit. Section 18–4–401(1)(b), C.R.S.2002.

 The crime of theft by deception requires proof that the victim parted with something of value in reliance upon misrepresentations by the defendant. A misrepresentation is a false representation of a past or present fact or a promise to perform a future act made with the present intention not to perform the promise or future act. *People v. Lewis,* 710 P.2d 1110 (Colo.App. 1985).

Here, the relevant portion of the jury instruction given for the elements of theft stated, "without authorization or by threat or by deception."

Defendant's reliance upon *People v. McCormick,* 784 P.2d 808 (Colo.App.1989), is misplaced. In *McCormick,* a division of this court considered whether the defendant was authorized to take his murder victim's money and property. The division defined exercising control over property "without authorization" as meaning that "the owner of the

property, or a person in possession of the property with the owner's consent, has not given the actor permission to exercise control over the property." *People v. McCormick, supra*, 784 P.2d at 810 (quoting *People v. Edmonds*, 195 Colo. 358, 578 P.2d 655 (1978)). The division concluded there can be no theft without wrongful appropriation of another's property.

Here, however, the jury instruction was phrased in the disjunctive, requiring proof of either lack of authorization or deception. Even assuming the victims initially authorized defendant to obtain control over their property, the evidence showed the investors relied upon defendant's misrepresentations when investing with defendant. The victims testified that they gave defendant their money as an investment in his company and did not know he used their money for personal purposes instead of its intended use as the company's start-up capital.

Viewing the evidence in the light most favorable to the prosecution, we therefore conclude the evidence was sufficient to support a finding beyond a reasonable doubt that defendant committed theft by deception.

Given our conclusions, we need not address defendant's alternative arguments based on *People v. Clayton*, 728 P.2d 723 (Colo.1986)(partners are coowners authorized to exercise control over partnership property); *People v. Gracey*, 940 P.2d 1050 (Colo.App.1996)(whether power of attorney granted defendant authority was question for jury); and *People v. Treat*, 193 Colo. 570, 568 P.2d 473 (1977)(no theft in the context of a simple debtor-creditor controversy). *See People v. Morrow, supra*.

Judgment affirmed.

Chief Judge DAVIDSON and Judge VOGT, concur.